UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**FLORENCIO GARCIA,**
    **- Plaintiff**

                v.                                    CIVIL NO. 3:09-CV-319 (CFD) (TPS)

**MICHAEL J. ASTRUE,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION,**
    **- Defendant**

## MAGISTRATE JUDGE'S OPINION

Pursuant to 42 U.S.C. § 405(g), the plaintiff, Florencio Garcia, seeks review of the final decision of the defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits and supplemental security income.  For the reasons set forth below, the plaintiff's motion to reverse the Commissioner's decision (Dkt. #10) should be GRANTED, the Commissioner's motion to affirm (Dkt. #14) should be DENIED, and the case should be remanded for further development of the record.  28 U.S.C. § 636(b).

The plaintiff alleges that he became disabled on June 1, 2006, at age 34, and that he suffers from HIV, depression, and back pain. After the plaintiff's application for benefits was denied, he requested a hearing before an Administrative Law Judge ("ALJ"). ALJ

1

Ronald J. Thomas held a hearing, which consisted of the plaintiff's testimony, on July 1, 2008 (Tr. 18-41), and then issued a decision on October 27, 2008, finding that the plaintiff was not disabled. (Tr. 6-17)  The Commissioner's Decision Review Board affirmed the ALJ's decision on January 28, 2009 (Tr. 1-5), and the plaintiff then filed the present case.

The ALJ must apply a five-step sequential evaluation process to each application for disability benefits.  See 20 C.F.R. §§ 404.1520 & 416.920.  First, the ALJ determines whether the claimant is employed.  If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment preventing him from working.  If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1.  If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.  However, if the claimant does not have a listed impairment, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience.  The claimant is entitled to disability benefits

only if he is unable to perform other such work.  The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. . . .  Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).

In the present case, the ALJ first determined that the plaintiff was unemployed.  (Tr. 11)  Next, the ALJ determined that the plaintiff's HIV and depression were severe impairments, but they did not meet or equal any of the listed impairments.[1]  (Tr. 12-14)  The ALJ then examined the plaintiff's RFC and found that the plaintiff could not perform his past relevant work as a roofer.  (Tr. 14-15)  However, the ALJ found that the plaintiff could perform light work in a supervised, low stress environment and that such work existed in the national economy.  (Tr. 14-16)  The ALJ accordingly determined that the plaintiff was not disabled.  The plaintiff now presents several arguments against that finding.

---

[1] The ALJ determined that the plaintiff's back pain was not a severe impairment, and the plaintiff does not challenge that finding in this case.

First, the plaintiff argues that the ALJ incorrectly evaluated the plaintiff's RFC with respect to his depression.  The plaintiff contends that the Commissioner's Decision Review Board should have considered a mental impairments questionnaire completed by Dr. R. Douglas Bruce, a psychiatrist, and Cecilia Gote and Michelle Mercurio, two clinicians.  (Tr. 355-60)  The plaintiff's counsel asked Bruce, Gote, and Mercurio to fill out the questionnaire on July 29, 2008, nearly one month after the ALJ hearing.  Bruce, Gote, and Mercurio returned the questionnaire to the plaintiff's counsel on October 28, 2008, which was the day after the ALJ issued his decision.

The Decision Review Board declined to consider the questionnaire, concluding that it did not satisfy 20 C.F.R. § 405.373 (b).  That regulation requires the claimant to show that (1) the new evidence has "a reasonable probability . . . alone or when considered with the other evidence of record, [of changing] the outcome of the decision" and (2) that the Commissioner "misled" the claimant or the claimant could not have submitted the evidence earlier due to a "physical, mental, educational, or linguistic limitation" or some other "unusual, unexpected, or unavoidable circumstance" beyond the claimant's control.

Bruce, Gote, and Mercurio indicated on the questionnaire that the plaintiff had some limitations in the mental abilities and aptitudes needed to do unskilled work (Tr. 357); that he had

4

moderate difficulties maintaining social functioning, concentration, persistence, and pace (Tr. 359); and that his limitations would probably require him to miss four days of work per month. (Tr. 360) However, they stated: "Psychiatrically, [the plaintiff] appears to be able to work." (Tr. 360) The information provided by the psychiatrist and clinicians does not suggest a reasonable probability of changing the ALJ's finding that the plaintiff's depression did not prevent him from working. Furthermore, the plaintiff has not presented any reasons for the delay in submitting the new evidence. The plaintiff has not met his burden under 20 C.F.R. § 405.373 (b).

Next, the plaintiff argues that the ALJ incorrectly evaluated his RFC with respect to his HIV. The plaintiff focuses on the ALJ's determination that the plaintiff's subjective complaints of pain and physical limitations were inconsistent with the objective medical evidence, which indicated that his HIV was not debilitating. The plaintiff does not dispute the ALJ's findings as to the objective medical evidence, but he contends that the ALJ improperly assessed the credibility of his subjective complaints. Credibility determinations are entrusted to the ALJ because the ALJ has the opportunity to observe the demeanor of the witness. <u>Carroll v. Sec'y of Health & Human Services</u>, 705 F.2d 638, 642 (2d Cir. 1983). In the present case, the ALJ found that the plaintiff was only partially credible on the basis of statements he made regarding his

substance abuse and ability to lift objects.  The ALJ accordingly determined that the plaintiff was not completely unable to work.

As to the plaintiff's substance abuse, he testified before the ALJ that he had been "clean and sober" for "about a year."  (Tr. 30)  On further direct examination, the plaintiff testified that he had used "no opiates" but had used marijuana "one time."  (Tr. 35)  The ALJ noted in his decision that, in contrast to the plaintiff's testimony, the plaintiff's urine had tested positive for cocaine, methadone, and marijuana.  (Tr. 15)  The positive test result cited by the ALJ (Tr. 245) bears no date, but the index to the record indicates that it occurred between July 27, 2006 and December 15, 2006, which was more than one year before the ALJ hearing on July 1, 2008.  Therefore, the positive test result does not support the ALJ's credibility finding as to the plaintiff's substance abuse.  The Commissioner points out that Dr. Jesus A. Lago, a psychiatrist, examined the plaintiff on July 5, 2007 and reported that "[a]pparently, [the plaintiff's] substance abuse does continue." (Tr. 267)  Dr. Lago's report was just barely within one year of the ALJ hearing, but the magistrate does not view Dr. Lago's statement as adequate support for the finding that the plaintiff was not credible with respect to his substance abuse.

As to his ability to lift objects, the plaintiff testified before the ALJ that his HIV prevented him from lifting heavy objects. (Tr. 28)  However, on October 23, 2007, the plaintiff went

6

to Yale-New Haven Hospital to receive treatment for back pain, stating that he had been "lifting 500 [pound] beams and carrying them." (Tr. 292) On March 19, 2008, he again received treatment for back pain, stating that he had been "lifting heavy objects into [the] back of his truck." (Tr. 288) The plaintiff's explanation for his statements at the hospital was that he had intentionally exaggerated the weight of the objects that he had been lifting in order to receive treatment more quickly. According to the plaintiff, he had actually lifted "ten or twenty pounds" while "throwing away some trash." (Tr. 37) The plaintiff testified as follows: "[I]f I tell them that I lift ten pounds . . . they won't even see me so I exaggerated a little bit." (Tr. 37) The magistrate views the inconsistency between the plaintiff's medical records and his testimony before the ALJ as adequate support for the finding that the plaintiff was not entirely credible. Accordingly, the ALJ relied on substantial evidence to find that the plaintiff's subjective complaints did not outweigh the objective medical evidence showing that he was able to work despite his HIV.

The plaintiff's next argument is that the ALJ failed to consider whether the combined effect of his impairments rendered him disabled even though none of them standing alone was disabling. The Commissioner points out that the ALJ explicitly found that the plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr.

12)  The ALJ also referred to the effects of the plaintiff's impairments throughout the five-step analysis.  For example, in determining the plaintiff's RFC, the ALJ stated that the plaintiff's "pain symptoms that appear throughout the record are legitimate" but insufficient to render him completely disabled.  (Tr. 14)  In light of those statements and other similar statements in the ALJ's decision, the magistrate's view is that the ALJ properly considered the combined effect of the plaintiff's impairments and did not consider them only in isolation.

The plaintiff also argues that the ALJ should have called a vocational witness rather than rely on the Medical-Vocational Guidelines ("the grids") when he determined that the plaintiff could perform some jobs.  See 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00 et seq.  The ALJ may rely on the grids rather than a vocational witness if the claimant's non-exertional limitations do not significantly limit the work he can perform given his exertional limitations.  See Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

In the present case, the plaintiff contends that the ALJ necessarily found that the plaintiff's non-exertional limitations were significant because the ALJ restricted him to performing light work in a supervised, low stress environment.  However, the ALJ explained that the plaintiff's need for supervision and a low stress environment "virtually leaves the light occupational base intact."

8

(Tr. 16)  The ALJ thus clearly indicated that the plaintiff's non-exertional limitations had minimal impact on the kinds of jobs that he could perform.  The ALJ's analysis of the effects of non-exertional limitations is specific to the claimant.  See Social Security Ruling 85-15 at *4-*6.  There was substantial evidence in this case that the plaintiff's depression did not have a significant impact on his exertional ability to do unskilled work.  As Bruce, Gote, and Mercurio noted in the mental impairments questionnaire, "[p]sychiatrically, [the plaintiff] appears to be able to work."  (Tr. 360)  Therefore, the ALJ was not required to call a vocational witness at the hearing.

   The plaintiff's last argument is that the ALJ should have considered the determination of the State of Connecticut Department of Social Services that the plaintiff was entitled to adult cash assistance because he was "unable to work long-term" as of December 2006 (Tr. 184) and "unemployable [for] at least 6 months" as of August 2008 (Tr. 191).  The state documents in the record do not explain the basis of the state's finding.  The plaintiff's counsel has not identified or provided any of the documents that may have supported the state's finding, and he did not alert the ALJ that an investigation of the finding was necessary.  The ALJ did not discuss the state's finding in his decision but stated that he considered all of the evidence in the record.  (Tr. 10)

   Social Security Ruling 06-03p provides that the ALJ must

9

"evaluate all the evidence in the case record that may have a bearing on [the] determination or decision of disability, including decisions by other governmental and nongovernmental agencies . . . . Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, [the ALJ is] not bound by disability decisions by other governmental and nongovernmental agencies." Social Security Ruling 06-03p at *6-*7 (Aug. 9, 2006).

The Commissioner argues that the ALJ's failure to address the state's finding explicitly constitutes harmless error because the ALJ relied on substantial evidence in rendering his decision. Thus, the Commissioner argues, even if there was evidence supporting the state's finding, it could not have overcome all of the evidence on which the ALJ based his decision. The problem with that argument is that the evidence on which the state based its determination is unknown. "Even when a claimant is represented by counsel . . . the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Although the record in this case is well-developed overall, it is not developed with respect to the state's finding that the plaintiff could not work. Therefore, the magistrate believes that the case should be remanded for the limited purpose of developing the record regarding the

state's finding.  The ALJ should then consider whether that development has any impact on his prior decision.  Given the amount of attention that the ALJ and the parties have accorded to this case to date, it may well be true that no additional evidence exists as to the state's finding.  In that instance, there would be no need for the ALJ to reconsider his prior decision.  However, the plaintiff should have an opportunity to explore the possibility that additional evidence exists.

    Accordingly, the court recommends that the plaintiff's motion to reverse (Dkt. #10) be GRANTED, the Commissioner's motion to affirm (Dkt. #14) be DENIED, and the case be remanded for the limited purpose of developing the record regarding the State of Connecticut's determination that the plaintiff was unemployable. Either party may timely seek review of this recommended ruling in accordance with Rule 72 (b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72 (b).  Failure to do so may bar further review. 28 U.S.C. § 636 (b)(1)(B); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

    **Dated at Hartford, Connecticut, this 17th day of February, 2010.**

    **/s/ Thomas P. Smith**
    **Thomas P. Smith**
    **United States Magistrate Judge**